**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 09-220 (PLF)** |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT KRAAIPOEL,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE
 AND SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to find that the defendant, Robert Kraaipoel, is entitled to the benefits of a sentencing departure as provided by § 5K1.1 of the United States Sentencing Guidelines ("the Guidelines").  The United States submits this motion based on the substantial assistance which Mr. Kraaipoel has rendered in the investigation and prosecution of other persons.  In addition, pursuant to § 3E1.1(b) of the Guidelines, the government moves for an additional one-level reduction in the defendant's offense level to reflect his timely guilty plea.

**I.      Procedural and Factual Background**

1.      Defendant Robert Kraaipoel and his son, Robert Niels Kraaipoel ("Niels Kraaipoel") (collectively, "the Kraaipoels"), are both Dutch citizens, and reside in the Netherlands.  The Kraaipoels operated the business Aviation Services International, B.V. ("ASI"), located in Heerhugowaard, the Netherlands.  Robert Kraaipoel served as the director and principal officer of ASI, while his son, Niels, served as sales manager.

2.      ASI's business was procuring U.S.-origin aviation parts for customers in Iran.  The Kraaipoels ordered the U.S.-origin parts from suppliers in the United States, and had them shipped to Amsterdam.  From there, the Kraaipoels re-packaged the goods and shipped them to customers

in Iran. These goods included aircraft parts, electronic communications equipment, aircraft-quality aluminum sheets and rods, and polyimide film. When U.S. suppliers inquired as to the end-users of the products, the Kraaipoels provided false information as to the destination and end-user of the products.

3. When investigators from the U.S. Commerce Department began looking into ASI's transactions in 2007, the Kraaipoels began using the names Delta Logistics, B.V. and TPC B.V. On October 1, 2007, the Commerce Department issued a Temporary Denial Order ("TDO") prohibiting U.S. companies from exporting any U.S.-origin goods to the Kraaipoels, ASI, Delta Logistics, or TPC. The effect of the TDO was essentially to end the Kraaipoels' business.

4. On September 24, 2009, the defendant pled guilty to conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371. In particular, the defendant pled guilty to a conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705, and the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774, and to violate the Iranian Transactions Regulations, 31 C.F.R. §§ 560.203 and 560.204.[1]

5. Without considering Mr. Kraaipoel's cooperation, a sentence within the guideline range of 46 to 57 months would clearly be appropriate in this case, and would satisfy the goals of Title 18, United States Code, Section 3553(a)(2). Although Mr. Kraaipoel has no prior criminal

---

[1] On that same date, Niels Kraaipoel and ASI also each pled guilty to conspiracy to violate IEEPA and the Iranian Transaction Regulations, in violation of 18 U.S.C. § 371, in Criminal Case 09-219 and 09-218, respectively. The government is filing a motion for a downward departure and sentencing memorandum for Niels Kraaipoel. Because ASI entered a plea pursuant to Rule 11(c)(1)(C), agreeing to a fine of $100,000 and five years probation as an appropriate sentence, the government is not filing a separate sentencing memorandum in that case. However, the government note that the agreed-upon sentence is appropriate for all the reasons included in this motion.

history, he was engaged in the business of illegally procuring sophisticated U.S.-origin goods for Iranian customers for many years. These items had both civilian and military applications.

6.      For example, in October and November 2005, Mr. Kraaipoel procured video receiver units from a U.S. company for an Iranian end-user. The units are typically used in cameras on unmanned aerial devices ("UAVs"). When the U.S. company asked Mr. Kraaipoel to identify the end-user, Mr. Kraaipoel falsely stated that the equipment was destined for Poland, for use by the Polish Border Control Agency. Mr. Kraaipoel further attempted to procure polyimide film, which is a protective film that is used to insulate electrical surfaces in extreme heat and cold, and, accordingly, has applications in missile development.

7.      Mr. Kraaipoel engaged in this conduct willfully, fully aware of the United States sanctions against Iran. Accordingly, without substantial assistance, the nature and circumstances of the offense in this case would dictate a sentence within the guideline range. As discussed below, however, the United States does believe that the defendant's substantial assistance in this case warrants a downward departure.

**II.     Nature and Extent of Cooperation**

8.      The United States has determined to file its motion to depart in the above-captioned matter after considering all of the facts and circumstances. As the Court is aware, in this District all departure motions made by the United States must be reviewed by the United States Attorney's Office Departure Committee. Counsel for the government submitted this matter to the Departure Committee for its review, and the Committee authorized the filing of this motion.

9.      Mr. Kraaipoel has provided substantial assistance to the government beginning in 2007, shortly after the issuance of the TDO. In October 2007 and January 2008, Mr. Kraaipoel

traveled to Dublin, Ireland and debriefed with numerous United States law enforcement agencies, including agents from the Commerce Department, the Federal Bureau of Investigation ("FBI"), Immigration and Customs Enforcement ("ICE") and the Defense Criminal Investigative Service ("DCIS").

10. As part of their debriefings, Mr. Kraaipoel and his son made available to U.S. law enforcement all of their business contacts and transaction documents. Moreover, the Kraaipoels provided detailed information on their Iranian customers, the Iranian end-users, the freight forwarders in the Netherlands, and their U.S. suppliers.

11. In September 2009, Mr. Kraaipoel and his son voluntarily flew into the United States to participate in several more debriefing sessions and to plead guilty. At the debriefing sessions, U.S. law enforcement agents and representatives gained substantial information from the Kraaipoels about the Iranian civilian and military end-users to whom they sold aviation parts. Mr. Kraaipoel also testified before the Grand Jury. In all of the sessions, Mr. Kraaipoel was truthful and forthcoming. As a result of the information provided by the Mr. Kraaipoel, a number of related criminal investigations began. When there were follow-up questions, Mr. Kraaipoel made himself available by phone from the Netherlands. In January of 2010, the Kraaipoels provided voluminous documents and records at the request of the government.

12. Specifically, this cooperation led to two arrests and convictions. In March 2009, Hossein Khoshnevisrad, an Iranian client of the Kraaipoels was arrested as he entered the United States. On June 1, 2010, Mr. Khoshnevisrad was convicted of Conspiracy to Export to an Embargoed Country and the Unlawful Export of Defense Articles in the United States District Court for the District of Columbia, and sentenced to fifteen months incarceration. In May 2012,

Ulrich Davis, the former manager of a Netherlands-based freight forwarding company used by the Kraaipoels was convicted of Conspiracy to Defraud the United States in the United States District Court for the District of New Jersey and was sentenced to six months incarceration.  Furthermore, the information provided by the Kraaipoels and the subsequent investigation by the United States led to a change in how freight forwarders conducted business, thereby making more difficult to transship items to Iran.  Finally, the are many other ongoing investigations still being conducted based on the information and documents provided by the Kraaipoels.

13.     In sum, the cooperation of Mr. Kraaipoel, through both his debriefings and the records he has provided, has led to numerous investigations, search warrants, indictments, and convictions of various parties involved in various aspects of the global Iranian procurement network.

14. The level of any departure is to be determined by the Court, based on the Court's evaluation of the significance and usefulness of the defendant's cooperation and other factors listed in Guideline § 5K1.1, as well as Title 18, United States Code Section 3553.  The  guideline range for Mr. Kraaipoel is 46 to 57 months incarceration.  As noted above, Mr. Kraaipoel voluntarily traveled into the United States to enter his guilty plea.  Based on Mr. Kraaipoel's extraordinary and extensive cooperation from the beginning of the investigation, the United States recommends a substantial departure from that range, for the reasons outlined above.

15. Accordingly, we recommend that the Court impose a sentence of 5 years probation. In arriving at this recommendation, we have considered the defendant's culpability in the network used to acquire U.S.-origin goods for Iran and the extreme seriousness of his conduct, and have balanced that against the significance of his cooperation.

WHEREFORE, the Government respectfully requests that the Court impose a sentence below the applicable Sentencing Guideline range.

Respectfully submitted,

RONALD C. MACHEN JR.
Bar No. 447-889
United States Attorney

By:    /s/
ANN H. PETALAS
GEORGE P. VARGHESE
Assistant United States Attorneys
National Security Section

/s/
JONATHAN C. POLING
Senior Trial Attorney
Counterespionage Section
Department of Justice